UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTOPHER SKEHEL, d/b/a/ The Castle Group,<br><br>Plaintiff,<br><br>v.<br><br>PHILLIP DEPAULIS and LISA DEPAULIS,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 13-11202-ADB |

## ORDER ON DEFENDANTS' POST-TRIAL MOTIONS

BURROUGHS, D.J.

## I.   INTRODUCTION

This case concerns a construction project in which Defendants engaged Plaintiff to manage the renovation of a vacation home in Nantucket. In the summer of 2010, Plaintiff and Defendants agreed orally that Plaintiff would serve as general contractor for the project, and that he would also provide labor and materials. Throughout this litigation the parties disputed the terms of the oral contract. The parties did not sign a written contract. Construction proceeded over the course of the next two years, during which time Defendants made payments to Plaintiff. Defendants made their final payment in July 2012. Several months later, Plaintiff ceased work on the project.

Plaintiff sued Defendants for breach of contract to recover additional money that he claimed he was owed. Defendants counterclaimed for breach of contract and negligence. On July 26, 2016, after a six-day trial, a jury found that Defendants breached their contract with Plaintiff and breached the covenant of good faith and fair dealing. The jury awarded Plaintiff $475,000. The jury did not reach Plaintiff's *quantum meruit* claim, having found the existence of an oral

contract. As to Defendants' counterclaims, the jury concluded that Plaintiff did not breach the contract, did not breach the covenant of good faith and fair dealing, and that he was not negligent in the renovation of the home.

Now before the court are Defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50, as well as Defendants' motion for a new trial pursuant to Fed. R. Civ. P. 59. [ECF No. 189]. For the reasons discussed below, Defendants' post-trial motions are <u>DENIED</u>.

## II.     DISCUSSION

### A.     Motion for Judgment as a Matter of Law

Fed. R. Civ. P. 50(a)(1) permits the Court to grant a motion for judgment as a matter of law on a claim or issue "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Under Rule 50(b), a party may renew its motion for judgment as a matter of law after the trial. In evaluating a Rule 50 motion, "'[a]ll of the evidence and reasonable inferences drawn from the evidence are . . . considered in the light most favorable to' the non-moving party," <u>Malone v. Lockheed Martin Corp.</u>, 610 F.3d 16, 20 (1st Cir. 2010) (quoting <u>Espada v. Lugo</u>, 312 F.3d 1, 2 (1st Cir. 2002)), in this case the Plaintiff. The bar for granting a Rule 50 motion is high: "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." <u>Id.</u> (quoting <u>Rivera Castillo v. Autokirey, Inc.</u>, 379 F.3d 4, 9 (1st Cir. 2004)).

#### 1.     Breach of Contract

Defendants argue that Plaintiff failed to meet his burden to prove that he performed his obligations under the contract, and therefore, that he is barred from succeeding on a breach of

2

contract claim. Specifically, Defendants allege that Plaintiff charged them for materials and labor that he never supplied to them. They also list a number of construction items that were either not completed or not constructed correctly, including: incomplete attic work, problems with sheetrock, a leaky roof, improperly installed cable, an incomplete wine cellar, incomplete electrical work, storm windows not installed, and the house's overall inability to pass inspection required for a certificate of occupancy. [Defendants' Brief ("Defs.' Br."), ECF No. 189, at 4]. Plaintiff counters that the only item he acknowledged he did not complete was the installation of the storm windows. [Plaintiff's Brief ("Pl.'s Br."), ECF No. 191, at 2].

  First, Defendants' concerns about incorrect charges are issues of fact that the jury reasonably resolved in Plaintiff's favor. Both parties introduced ample testimony and conducted thorough cross-examinations concerning the terms of the oral contract and the bills generated by Plaintiff and payments made by Defendants. The jury was entitled to weigh competing understandings of the terms of the contract between the parties and accept Plaintiff's testimony about the agreement, including the cost of labor. The jury was not required to credit the specific testimony identified by Defendants in their motion. For example, Plaintiff testified that a washer and dryer that a bill indicated were initially delivered to an incorrect address were ultimately installed at Defendants' house. The jury could permissibly credit this explanation. Furthermore, as Plaintiff points out, the testimony cited by Defendants concerns relatively minor errors, and Plaintiff testified that a post-project audit was conducted that corrected some billing mistakes, which could include the issues identified by Defendants in their motion.

  Next, at least some of the incomplete or inadequate work about which Defendants complain resulted from Plaintiff's decision to cease work after Defendants had not paid him for several months. Plaintiff was entitled to take that action; he was not required to continue working

once the Defendants had stopped payment, thereby "run[ning] the risk that he would not be paid" for the additional work. Petrangelo v. Pollard, 255 N.E.2d 342, 346 (Mass. 1970); see also Mark Bombara Interior Design v. Bowler, 844 N.E.2d 616, 620 (Mass. 2006) (citing Petrangelo). Plaintiff produced sufficient evidence for a reasonable jury to find that he performed his contractual obligations up to the point at which Defendants allegedly ceased performance of their obligations. Therefore, the Court is not required to find that Plaintiff is unable to recover for breach of contract.

## 2. Admissibility of Damages Evidence

Defendants claim that the breach of contract verdict cannot stand because Plaintiff's damages evidence was inadmissible. Defendants argue that Plaintiff did not lay a proper foundation to admit his invoices as business records, pointing to Plaintiff's testimony indicating that he was not familiar with the recordkeeping system for his business and that he was unable to confirm the accuracy of the records. Defendants also contend that the receipts and records from independent contractors and third-party vendors were double hearsay, inadmissible without the proper independent foundation.

Defendants' objection to the admission of the invoices and the third-party receipts comes too late. Defendants did not register any objections when this evidence was admitted at trial, so they have waived the right to complain of its admission now. In his opposition, Plaintiff provides a long list of transcript citations to points at which various invoices, "back-up" materials, and third party receipts were admitted. Pl.'s Br. at 4. In each case, Defendants either specifically declined to object ("No objection, Your Honor") or the Court noted that there was no objection. Id.; compare Defs' Br. at 8–9 (quoting Plaintiff's testimony at transcript volume four, page 45) with Tr. Vol. IV at 43 (Plaintiff's counsel asks to admit document, and Defendants' counsel

4

replies, "No objection"). Almost all of the testimony that Defendants cite in their motion concerned exhibits that had already been admitted at the time of the testimony. Defendants did object to the admission of one document that had been created after the commencement of the lawsuit, and the Court excluded that document. Tr. Vol. II at 142–44. A party may only argue that it was error to admit evidence if that party timely objected or moved to strike. Fed. R. Evid. 103(a)(1)(A). Here, because Defendants did not do so, they are foreclosed from arguing that the evidence should not have been admitted. Once the evidence was admitted, the concerns that the Defendants have identified went to the weight, not the admissibility, of the evidence, and became the province of the jury to decide.

### 3.     Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that Plaintiff did not provide sufficient evidence of bad faith or absence of good faith to prevail on his claim against Defendants for a breach of the covenant of good faith and fair dealing. Defendants claim that a violation of the covenant "usually requires more than a simple breach," Targus Group International, Inc. v. Sherman, 922 N.E.2d 841, 853 (Mass. App. Ct. 2010), and that Plaintiff was required to present "evidence of bad faith or an absence of good faith," Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet National Bank, 924 N.E.2d 696, 706 (Mass. 2010). Courts have also said, however, that "the core question remains whether the alleged conduct was motivated by a desire to gain an unfair advantage," Young, 717 F.3d at 238, and here, the jury could have reasonably concluded that Defendants knowingly allowed work to continue despite not intending to pay any additional bills for work performed after July 2012. Defendants knew that construction on their house continued to progress, and that they would benefit from that construction. Defendants could have instructed Plaintiff to cease work pending resolution of the

payment dispute, but they did not do so. In weighing the evidence, the jury could have reasonably decided that Plaintiff performed the additional work based on an understanding that Defendants would eventually compensate him for his work, and could have further found that Defendants used this situation to their advantage either to obtain a benefit from Plaintiff for which they did not intend to pay, or to use as a bargaining chip to negotiate the final bill down. See Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc., 692 N.E.2d 964, 977–79 (Mass. App. Ct. 1998) (violation of covenant of good faith and fair dealing for one party to withhold payment while other party continued to perform, where non-performing party's goal was to obtain leverage to settle for less money than was owed). Therefore, the jury had sufficient evidence to reasonably determine that Defendants breached the implied covenant of good faith and fair dealing.

    **B.**    **Motion for New Trial**

Under Fed. R. Civ. P. 59, the Court has the broad power to grant a new trial "whenever, in its judgment, the action is required in order to prevent injustice." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (quoting Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988)). The Court is free to independently weigh the evidence, as well as to decide that the verdict is against the weight of the evidence. Id. At the same time, a "'district judge cannot displace a jury's verdict merely because [he or she] disagrees with it' or because 'a contrary verdict may have been equally . . . supportable." Id. (quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)). Rather, the Court may grant the motion and set aside the jury's verdict "only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage

of justice." Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004) (quoting Federico v. Order of Saint Benedict in Rhode Island, 64 F.3d 1, 5 (1st Cir. 1995)).

### 1. Jury's Verdict and the Weight of the Evidence

Defendants argue that the jury's verdict was against the weight of the evidence and that they are thus entitled to a new trial. As an initial matter, Defendants again cite the admission of evidence to which they did not object at trial; as discussed *supra*, Defendants have waived that argument.

Next, Defendants argue that Plaintiff's business records and his testimony were contradictory, riddled with errors, and contained "demonstrably false statements" to such a degree that it was impermissible for the jury to credit Plaintiff's statements or return a verdict in his favor. As an example, Defendants point to varying statements made by Plaintiff concerning how labor and costs were to be billed. Plaintiff's affidavit, which was read into evidence, asserted that he and Defendants agreed that he would bill for labor at $40–60 per hour, to be billed separately from the general contractor's fee, which would amount to 15% of all labor and materials. Tr. Vol. III at 103. The jury apparently believed this version of Plaintiff's testimony, despite additional testimony given by Plaintiff that Defendants argue is inconsistent. The fact that a party gives inconsistent testimony does not invalidate that testimony; instead, the jury must determine what testimony, if any, to credit. In this instance, the jury's decision may have been buttressed by additional evidence indicating that Defendants paid Plaintiff's bills, which included separate labor costs, for months. Ultimately, the conclusion that the jury reached is not "so clearly against the weight of the evidence" that a new trial is required.

### 2. Statements Concerning Defendants' Wealth

In response to one of Defendants' motions *in limine*, the Court ruled that the parties could introduce evidence pertaining to the parties' relative sophistication and experience in real estate and construction matters, but Plaintiff was not permitted to make gratuitous references to Defendants' wealth. [ECF No. 142, at 2]. Defendants argue that Plaintiff's counsel ignored this ruling several times. For example, Plaintiff's counsel stated that Defendants paid cash for their home; that they held "extensive real estate" interests; that they purchased a home for "$2.3 million cash" through a real estate trust, and that they had a "sense of entitlement." Some of these statements did not run afoul of the Court's directive at all; for instance, the Court did not and could not prohibit counsel from discussing the property, its purchase price, and related costs, which the Court explicitly noted were relevant to the central issue in dispute, the cost of the renovation. Id. Moreover, the references Defendants cite were fleeting and certainly not egregious. In addition, as Plaintiff points out, Defendants' counsel made similar statements. See Tr. Vol. 1 at 104 (stating that Defendants used their savings to purchase a "two-million plus dollar" home); Tr. Vol. 1 at 114 (stating that Defendants "could afford to be shaken down"). In the context of a six-day trial, the handful of isolated statements identified by Defendants could not have caused sufficient prejudice to compel the granting of a new trial. Further, Defendants also elicited similar statements regarding Plaintiff's financial circumstances, likely leading the jury to conclude that both parties had significant financial resources.

### 3. Damages Testimony

Lastly, Defendants argue that Plaintiff was allowed to introduce impermissible testimony pertaining to damages. Plaintiff provided expert testimony concerning construction costs to support his quasi-contract and unjust enrichment claim. In response to Defendants' motion *in*

*limine*, the Court ruled that, because *quantum meruit* damages were limited to the fair and reasonable value of material and labor provided by Plaintiff, Plaintiff was not allowed to argue or present evidence that included lost profit or overhead in *quantum meruit* damages. [ECF No. 152]. Plaintiff's expert testified that he estimated the total cost of the project by adding the cost of the services and materials he would have used for a project of that size, without considering what work was actually done on the actual project. This testimony complied with the Court's ruling that the expert was to excise lost profit and overhead from his estimate. Defendants' argument amounts to an assertion that the expert's testimony was irrelevant. The estimate, however, could have provided useful context and comparison for the jury. Defendants had the opportunity to cross-examine the expert to illustrate to the jury why his testimony might be of little or no value. Thereafter, the jury was entitled to consider the testimony and to give it as much weight as they deemed appropriate.

Defendants also argue that Plaintiff's counsel impermissibly referenced a profit figure, and claim that the jury relied upon that figure to determine damages. During closing, Plaintiff's counsel stated in two instances that the expert's testimony provided a basis to add a 25% profit to the *quantum meruit* award. The first time counsel made a comment referring to profit, Defendants objected, and the Court instructed Plaintiff's counsel to use the figure correctly. Tr. Vol. VI at 156–57. Plaintiff's counsel resumed his closing, and after a moment he again referred to the profit figure. Id. at 157–58. Defendants objected, and the Court sustained the objection. Id. at 158. Therefore, the comments with which Defendants take issue were not considered by the jury. Furthermore, the Court instructed the jury multiple times that attorneys' statements and closing arguments do not constitute evidence. Tr. Vol. I at 78, 86; Tr. Vol. VI at 175.

Finally, as Plaintiff points out, even if the Court were persuaded by Defendants' arguments concerning the profit figure comments, it would not justify the granting of a new trial because the jury did not reach the *quantum meruit* claims, having instead found that Defendants breached the oral contract between Plaintiff and Defendants.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for judgment as a matter of law and Defendants' motion for a new trial [ECF No. 189] are <u>DENIED</u>.

**SO ORDERED.**

October 17, 2016                                    /s/ Allison D. Burroughs
                                                              ALLISON D. BURROUGHS
                                                              U.S. DISTRICT JUDGE