UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER SKEHEL, *d/b/a* The Castle Group, | * * * |
| Plaintiff, | * * |
| v. | * Civil Action No. 13-cv-11202-ADB * |
| PHILLIP DEPAULIS and LISA DEPAULIS, | * * |
| Defendants. | * * * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

  This case concerns a construction project in which Defendants Phillip DePaulis and Lisa DePaulis engaged Plaintiff Christopher Skehel to manage the renovation of a vacation home in Nantucket. Mr. Skehel sued the DePaulises for breach of contract and related claims, and the DePaulises counterclaimed for breach of contract, associated claims, and violations of Mass. Gen. Laws ch. 93A, §§ 2, 11. On July 26, 2016, after a six-day trial, a jury found that the DePaulises breached their contract with Mr. Skehel and breached the covenant of good faith and fair dealing, and awarded Mr. Skehel $475,000. As to the DePaulises' counterclaims, the jury concluded that Mr. Skehel did not breach the contract, did not breach the covenant of good faith and fair dealing, and was not negligent in the renovation of the home.

  The Court reserved judgment on the DePaulises' Chapter 93A counterclaim pending the outcome of the jury trial. On December 7, 2016, the Court entered judgment for $475,000 on the counts tried to the jury. [ECF No. 194]. The DePaulises now move to amend the judgment to address the Chapter 93A claim. [ECF No. 195]. Mr. Skehel opposes the motion on the basis that

the December 7 judgment is only a partial judgment, as the Chapter 93A claim has not yet been addressed. [ECF No. 196].

Mr. Skehel is correct that the December 7 judgment is a partial judgment that does not dispose of the Chapter 93A claim. Therefore, the Court enters the following findings of facts and conclusions of law concerning the Chapter 93A claim, enters judgment on the Chapter 93A claim for Mr. Skehel, and denies the motion to amend the judgment as moot.

I.   **FINDINGS OF FACT**

The Court makes the following findings of fact, consistent with the jury verdict.[1] Phillip and Lisa DePaulis are a married couple who reside in New Jersey. Mr. DePaulis worked in the homebuilding industry and owned a construction company for 35 years, and Mrs. DePaulis worked as a bookkeeper for Mr. DePaulis' business. In October 2010, the DePaulises purchased a vacation home on Nantucket through a real estate trust for $2.3 million in cash. Prior to finalizing the purchase of the house, they contacted Mr. Skehel, who is a contractor and resides in Nantucket. The DePaulises explained that they wanted to renovate the entire house with high-end materials. Mr. Skehel gave the DePaulises a rough estimate of $790,000 to complete the job. Later, Mr. Skehel met with the DePaulises and explained that he would charge between $40 and $60 per hour for labor, depending on the skill level required for the task; all materials would be provided at cost; and he would charge an additional 15 percent general contractor's fee. The DePaulises agreed to these terms prior to finalizing the purchase of the house. The parties never put their agreement in writing.

---

[1] The Court is aware that it can make factual findings independent of those apparently found by the jury, see Baker v. Goldman Sachs & Co., 949 F. Supp. 2d 298, 307–08 (D. Mass. 2013) (citing cases), but declines to do so in this case.

After beginning work on the home, Mr. Skehel realized that the project would require the services of an architect to handle certain structural engineering issues. The DePaulises assented, and Mr. Skehel hired an architect. In February 2011, the DePaulises approved the plans drawn up by the architect. In March 2011, Mr. Skehel explained to Mr. DePaulis that the project would cost more than the initial estimate, and he stated the total would be closer to $1.5 million. Mr. DePaulis agreed to the higher sum. A document prepared by Mr. Skehel's company dated March 8, 2011 reflected that, at that time, the renovation was projected to cost $1.5 million. Afterward, the DePaulises requested other modifications to the project.

Mr. Skehel sent the DePaulises an invoice every month during the time that he worked on the renovation. The DePaulises regularly paid the monthly bills, without objection, until July 2012. Mr. Skehel continued to work on the project for several months after the DePaulises ceased payment, based on the DePaulises' assurances that they would eventually pay the balance. After the project was complete, Mr. Skehel's office conducted a reconciliation of the invoices and discovered about $15,000 in overcharges, less undercharges, so Mr. Skehel credited $15,000 to the DePaulises' account.

The Court found the testimony of both sides to be reasonably credible, but the Court ultimately credits Mr. Skehel's version of events. As relevant to deciding the Chapter 93A claim, the Court notes that the DePaulises' story differs from Mr. Skehel's in a few key respects. The DePaulises claimed that their agreement with Mr. Skehel was simply that they would pay Mr. Skehel's costs plus 15%. Mr. DePaulis testified that he believed that $1.5 million figure provided by Mr. Skehel in March 2011 was a final total for the project, not an estimate. The DePaulises claim that the March 8, 2011 document supports this version of events, because it uses the word "budget," not "estimate." The parties also dispute the magnitude and cost of the modifications

requested by the DePaulises after March 2011; Mr. Skehel claims that the modifications were significant, while the DePaulises assert that they were minimal. Lastly, the DePaulises claimed that the bills prepared by Mr. Skehel included numerous mistakes and misstatements, including charging the DePaulises for labor at a higher rate than what Mr. Skehel actually paid to the subcontractors who worked on the project.

## II. CONCLUSIONS OF LAW

The DePaulises claim that Mr. Skehel violated Mass. Gen. Laws ch. 93A, §§ 2, 11[2] in three ways: exceeding the budget without approval; telling the DePaulises that all major work had been billed; and by submitting invoices for work that was not performed, duplicative, and beyond the scope of the agreement, and that included costs not actually incurred. [ECF No. 78 ¶¶ 26–31].

Given that the Court credits Mr. Skehel's version of events, there is no basis to find for the DePaulises on their Chapter 93A claims. On the issue of mistakes in the invoices, Mr. Skehel's office performed a comprehensive audit once the project was complete that corrected any mistakes and credited the difference to the DePaulises. To the extent that the DePaulises complain of work and expenses that exceeded the budget without their approval, the Court determines that Mr. Skehel never promised the DePaulises that he would keep the expenses below $1.5 million. Furthermore, the DePaulises should have been aware that the additional modifications they requested in the later stages of the project, in addition to ordinary unforeseen

---

[2] It is not apparent to the Court why the DePaulises brought their counterclaim pursuant to Mass. Gen. Laws ch. 93A, § 11, which provides a cause of action for plaintiffs "engage[d] in the conduct of any trade or commerce," typically understood to be businesspeople or commercial entities, instead of § 9, which provides a cause of action for consumer plaintiffs and to which courts apply a more lenient standard. Nonetheless, consistent with the counterclaim, the Court will analyze the claims pursuant to § 11. The Court notes that Mr. and Mrs. DePaulis both had successful careers in home construction, and thus were more sophisticated and knowledgeable in this area than the average consumer.

4

difficulties and overruns inherent in home renovation, especially in a town with strict permitting standards, could reasonably cause the final bill to exceed $1.5 million. Ultimately, the DePaulises' Chapter 93A claims are derivative of their unsuccessful claims for breach of contract, breach of the covenant of good faith and fair dealing, and negligence, and thus, they cannot succeed. See, e.g., Murphy v. Nat'l Grange Mut. Ins. Co., No. CIV. 13-11363-FDS, 2014 WL 5307671, at *6 (D. Mass. Oct. 16, 2014) (where Chapter 93A claim was "derivative of the underlying breach of contract claim[,] . . . . [s]ummary judgment as to the underlying contract claim forecloses a derivative chapter 93A claim"); Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 247 (Mass. App. Ct. 2004) (because Chapter 93A claim was "wholly derivative" of unsuccessful tort claim, there was no basis for recovery).

Furthermore, even if the Court agreed with the DePaulises that Mr. Skehel exceeded the budget without permission and did not correct mistaken invoices, this conduct would not rise to the level of egregiousness required to constitute a violation of Chapter 93A.[3] The DePaulises brought their counterclaims pursuant to Mass. Gen. Laws ch. 93A, § 11, which is "judged by a standard of unfairness higher than the standard employed where actions are brought by a consumer under § 9 of the statute." Madan v. Royal Indem. Co., 532 N.E.2d 1214, 1217 n.7 (Mass. App. Ct. 1989). "To be actionable, the challenged misconduct must rise to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or similar level of 'rascality' that raises 'an eyebrow of someone inured to the rough and tumble of the world of commerce.'" Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co., 802 F.3d 39, 54 (1st Cir. 2015) (quoting Baker v. Goldman Sachs & Co., 771 F.3d 37, 49–51 (1st Cir. 2014) and Zabin v. Picciotto, 896

---

[3] Likewise, had the Court accepted the DePaulises' version of events rather than Mr. Skehel's version, it would again not have found that the conduct was egregious enough to establish a Chapter 93A violation.

5

N.E.2d 937, 963 (Mass. App. Ct. 2008)). In this case, exceeding an agreed-upon budget would not come close to satisfying the Chapter 93A, Section 11 standard. The worst conduct that the DePaulises have alleged is that Mr. Skehel knowingly and intentionally billed them for labor that was not actually performed or materials that were not delivered. While this would certainly reflect poor behavior, if true, it is not so "extreme" or "egregious" that it is akin to "extortion." The DePaulises do not deny that they received itemized invoices for the work performed, and they were capable of evaluating the charges and disputing any items that they believed to be incorrect. Accordingly, they have not alleged conduct that rises to the level of a violation of Chapter 93A, Section 11.

### III. ORDER

Based on the above Findings of Fact and Conclusions of Law, this Court <u>ORDERS</u> that judgment enter in favor of Mr. Skehel on the DePaulises' Chapter 93A counterclaim. The DePaulises' motion to amend the judgment [ECF No. 195] is <u>DENIED</u> as moot. In addition, the Court grants Mr. Skehel's request [ECF No. 196] to enter an award of prejudgment interest from the date of each unpaid invoice that was submitted to the DePaulises.[4]

**SO ORDERED.**

June 1, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[4] Mr. Skehel is entitled to an award of prejudgment interest on the breach of contract claim pursuant to Mass. Gen. Laws ch. 231, § 6C. Interest is calculated from the date of the breach or demand, and the submission of an invoice can constitute a demand. <u>Analysis Grp., Inc. v. Cent. Florida Investments, Inc.</u>, 629 F.3d 18, 24 (1st Cir. 2010). The admissibility and dates of the invoices in question were not disputed at trial, and so the Court agrees with Mr. Skehel that the dates of the unpaid invoices constitute the date of demand for purposes of calculating prejudgment interest.